**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA

v.                                                              Case No: 6:13-cr-257-Orl-40TBS

MICHAEL LARKIN FIELD
_____

### ORDER

This cause comes before the Court on Defendant's Motion to Revoke Order of Detention (Doc. 138), filed May 9, 2017, and the Government's Response in Opposition. (Doc. 140), filed May 15, 2017. Upon consideration of the pleadings and the transcript of the bond hearing, the Defendant's motion will be granted.

**I.  BACKGROUND**

**A.  Procedural History**

On October 9, 2013, Defendant, Michael Field, was charged in a one-count Indictment with possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (Doc. 1). By November 11, 2013, the Magistrate Judge ordered a competency evaluation, having recognized Mr. Field's serious mental illness. (Doc. 16). Three months later, Mr. Field was found competent to stand trial. (Doc. 23). After several continuances to address his mental illness, Mr. Field pled guilty and this Court accepted his plea. (Doc. 72). In preparation for the sentencing hearing, counsel for both Mr. Field and the Government submitted detailed sentencing memoranda. (Docs. 83, 85, 96, 101). Shortly before the scheduled sentencing hearing, Mr. Field was again referred for a competency evaluation. (Docs. 93, 94, 99). Psychological evaluations by Dr. Robert Kennerley, Mr.

1

Field's current treating mental health professional, and Dr. Eric Imhof, were also provided to the Court. (Sealed Doc. 103).

### B.	The Sentencing Proceeding on the Indictment

The sentencing proceeding was held on January 30, 2015. (Doc. 115). Dr. Imhof testified at length and provided a detailed analysis of Mr. Field's many and varied mental health issues. (*Id.*). Prior to the hearing, the Court closely reviewed voluminous medical records dating back to 2005. The testimony and documentary evidence unequivocally proved Mr. Field, as a child, had been the victim of repeated and traumatic sexual abuse over an extended period of time, not less than nine years, at the hands of a trusted relative.  The trauma inflicted upon Mr. Field was so severe that it resulted in a lifelong struggle with Dissociative Identity Disorder ("DID")—literally the splintering of his ego into no less than seven competing personalities. The harm endured as a child was compounded during his service in the Navy. This medical history was unchallenged, unquestionably accurate, and is manifested in psychiatric and psychological records which predate his arrest by at least eight years. Due to the extraordinarily unusual mental health history present in the instant case, this Court varied from the advisory guideline range, and imposed a sentence of time served, followed by a lifetime of supervised release. (Docs. 118, 120).

### C.	Bond Hearing on Violation of Supervised Release

Mr. Field appeared before Magistrate Judge Baker on April 28, 2017 for his initial appearance and bond hearing arising from violations of conditions of supervised release (positive urinalysis). (Doc. 123). Magistrate Judge Baker continued the detention hearing, and Mr. Field was restored to conditions of supervised release pending the issuance of a

new hearing date. (Doc. 123). The minutes of the April 28th hearing reflect the Government represented to the Court that Mr. Field posed a danger to himself, due to his positive urinalysis, more than being a flight risk. (*Id.*). The bond hearing was scheduled for May 5, 2017. (Docs. 130, 131).

The bond hearing was conducted by Magistrate Judge Kelly. (Doc. 133). At the hearing, the Court received a letter from Dr. Kennerley—Mr. Field's mental health counselor, (Doc. 134)—and the Court heard from Mr. Field's daughter, Tabitha Field, and Probation Officer Bryce Hartgrave. (Doc. 136). Counsel for Mr. Field voiced concern that Mr. Field, who currently resides in an adult facility for sex offenders, could lose his placement and be rendered homeless by imposing a period of pre-hearing detention. (Doc. 136, p. 3). The supervising probation officer, Mr. Hartgrave, was then permitted to proffer to Magistrate Judge Kelly an overview of his supervision activities.

Mr. Hartgrave explained to the Court that Mr. Field has dissociative identity disorder and has seven personalities. (*Id.* at p. 4). For the majority of 2016, Mr. Hartgrave has been dealing with the major personality—or alter—known as Tristin. (*Id.*). The difficulty in supervising Mr. Field in terms of the recent onset of his drug usage is directly related to his dissociative identity disorder. That is, if Mr. Field's personality, as opposed to his alter, is present during a substance abuse treatment session, he will not have any idea why he is at the meeting. (*Id.*). This is because Mr. Field is not using illegal drugs; rather, the personality Tristin is the one who is using drugs. (*Id.*).

The Court is aware that Tristin is the identity that appeared following years of sexual abuse by Mr. Field's family member.[1] At the sentencing hearing, the medical records clearly corroborated that this identity was created, along with several other identities, following the abuse.[2] Mr. Hartgrave went on to explained at the bond hearing that Mr. Field's treating psychologist, Dr. Kennerley, is working on uniting the seven different personalities.[3] (*Id.* at pp. 4-5). Due to these factors, Mr. Hartgrave stated "I'm not asking for detention on him because the only stable factor in his life is his residence. If we detain him for any period of time and he's released, say, at sentencing, we're going to have a homeless sex offender with possible drug issues."[4] (*Id.* at p. 5). Counsel for the Government agreed, stating "I don't think incarceration, given the situation that he's dealing with or his mental health issues, is the best option unless there's no other way because he continues to use controlled substances." (*Id.* at p. 9).

A presumptive drug test administered the day of the bond hearing resulted in a positive test result for methamphetamines and amphetamines. (*Id.* at p. 10). By way of additional background, Mr. Field first tested positive for marijuana in June of 2016, after having been on supervised release without incident for 18 months. (*Id.* at pp. 5, 8–9).

---

[1] The offending family member was sentenced to a lengthy prison term for the sexual abuse of Mr. Field.
[2] Additionally, Government counsel acknowledges the Defendant was the victim of sexual abuse at a very young age, resulting in the development of several personalities to cope with the abuse. (Doc. 136, p. 6).
[3] Dr. Kennerley provided a letter dated May 3, 2017 wherein he explains his efforts at uniting the seven personalities and the dominant role played by Tristan among the personalities. (Exhibit One, filed under seal).
[4] Mr. Field currently resides in the residential sex offender housing in his own room and is accompanied by a service dog. (Doc. 136, p. 5).

Ms. Tabitha Field, Mr. Field's twenty-two-year-old daughter, testified that she is willing to serve as a third-party custodian. (*Id.* at pp. 14–15). Ms. Field is a responsible adult who is gainfully employed and lacks any criminal history. (*Id.* at pp. 14, 18). Mr. Field's former wife continues to be supportive and provides him a monthly allowance for expenses. (*Id.* at p. 18). The Court confirmed that Ms. Field understood the responsibilities of a third-party custodian, including the duty to report violations of conditions of supervised release to the Court. (*Id.* at p. 19).

Probation Officer Hartgrave testified next; he has been supervising Mr. Field since January 2016. (*Id.* at p. 22). Mr. Hartgrave related the history of positive urinalysis beginning in June 2016, and explained that during the past year he has been dealing with the alter Tristin, as opposed to Mr. Field. (*Id.* at pp. 22–23). Mr. Hartgrave stated that "Tristin had explained to me that she had a prescription for Adderall or I believe it was Ritalin earlier one. And she had heard from somebody that methamphetamine was similar to those substances. And that's why she was curious to take it." (*Id.* at p. 23).

The Government established that the alter, Tristin, was driving from New Smyrna Beach to Daytona Beach to purchase the drugs. (*Id.* at p. 24). Mr. Hartgrave has been attempting to address Mr. Field's substance abuse, but treatment is complicated by Mr. Field's mental health issues. (*Id.* at p. 25). Mr. Hartgrave explained:

> When Michael [Field] is present—or before the last few months, when Michael is present, the other personalities are not present. When Tristin is present, the other personalities—it's Annie, Nicole, Megan, Bailey, Tristin and I believe Robert is the other male—they are all present.
>
> So what Dr. Kennerley has been trying to do is get Michael to meet Tristin and the other personalities. He's been addressing some substance abuse issues with him. However, it's difficult because of the severity of the mental health issues.

5

(*Id.*).

The manner by which the multiple personalities complicate substance abuse treatment is evidenced by the following testimony:

> My last encounter with him [Mr. Field] in March over the methamphetamine drug use was very interesting. The day before I had talked to, I believe, Michael on the phone. He was at the V.A. Clinic.
>
> And Michael had told me that he had slipped up and he let us down, meaning he let me and himself down . . . . So I asked him to be home the next night. It was a Friday night. And I asked to stop by and talk to him. When I showed up, Michael seemed very surprised to see me.
>
> And usually what I do is when I talk to him, I'm fairly good— it's a very complex situation. But I'm fairly good at asking who I'm dealing with. And that night I didn't.
>
> And so I sat down and I was addressing the drug use with Michael and I talked about his admission from the day before, and he had no idea what I was talking about. And it was clear. He said he wasn't privy to the conversation.
>
> And so I asked him when—you know, who am I dealing with? He said, you're dealing with Michael. And I said, Michael, when was the last time me and you talked? And he said, many months ago when he lived at the front of the apartment complex.
>
> And then to get to my point. So me and him had a conversation. He was not aware of any of his drug use. He's aware of it through family members, through myself, and Dr. Kennerley. But he didn't remember too much . . . .
>
> And then during one point, he asked if I wanted to talk to Tristin. And I asked for Tristin. And there's a physical metamorphosis that you witness. And then I was dealing with Tristin. Me and Tristin had a conversation about his drug use. She admitted to the drug use . . . . I saw his personality possibly change again to Annie, which is the minor. Before I left, he was kind of curled up on his cot and very child-like. And I've never seen that before.

(*Id.* at pp. 26–27). Mr. Hartgrave further testified that even in obtaining the urine specimen that very day, he was dealing with Tristin. (*Id.* at p. 28). Based on the most recent positive urine test, Mr. Hartgrave changed his recommendation to detention. (*Id.* at p. 29).

On cross-examination, Mr. Hartgrave agreed that Mr. Field is starting to make progress as a result of his psychological counseling. (*Id.* at p. 30). He also acknowledged that he has "no reason to believe that the person I know as Michael is [using drugs]. The body is using drugs. That's how I categorize it. It's not the person. It's the body." (*Id.* at p. 31). Moreover, Mr. Field is taking psychotropic medication and is compliant. (*Id.* at p. 32). On the issue of drug treatment, Mr. Hartgrave testified he believes Tristin wants help with sobriety, but he [Hartgrave] does not know how to address accomplishing this goal. (*Id.* at p. 33). Mr. Hartgrave does not believe Mr. Field, or the alter Tristin, are a danger to the community, other than operating a vehicle under the influence, nor does he consider them to be a risk of flight. (*Id.* at pp. 33–34).

Following the submission of testimony and Dr. Kennerley's letter, counsel for Mr. Field recommended home detention, excluding mental health or drug counseling. (*Id.* at p. 36). The Court acknowledged that Mr. Field "seems to just stray out [of his residence] for acquiring drugs and apparently uses them in the home. Because there was testimony from Officer Hartgrave that he [Mr. Field] had found some left over in the home. So I'm surmising he's bringing it back to the home and using it there." (*Id.* at p. 37). Defense counsel also recommended location monitoring be imposed, and noted that Dr. Kennerley wants to increase therapy to three sessions per week. (*Id.* at pp. 36–37). Counsel for the Government stated that, based on Mr. Field's history, he needs intensive treatment and, while having reservations, agreed with the recommendation of location monitoring. (*Id.* at

p. 40). However, after generally discussing the availability of drugs while acknowledging the lack of evidence that drugs are available near his residence, the Government ultimately supported Probation's detention recommendation. (*Id.* at p. 41).

The Magistrate Judge concluded that Mr. Field had not met his burden to establish by clear and convincing evidence that he will not flee or pose a danger to the community. (*Id.* at pp. 42–43). The Court cited the following factors: (1) this violation is for use of drugs; (2) the weight of the evidence against Mr. Field is heavy, (3) Mr. Field's personal history does not weigh heavily either way, and (4) while Mr. Field is certainly not a risk of violence, his driving and using drugs poses a danger to the community. (*Id.* at pp. 42–43).

## II.   STANDARD OF REVIEW

A person ordered detained by a magistrate may seek review of the detention order in district court, pursuant to 18 U.S.C. § 3145(b). *United States v. Kidd*, 2013 WL 142317, at *1 (N.D. Ga. Jan. 11, 2013). However,

> where an original magistrate's release order is subsequently modified or set aside in accordance with the terms of the governing bail statues, the findings made and conclusions reached by the first magistrate to consider release do not have to be found to be clearly erroneous before any modification to the magistrate's order can be made. Rather the reviewing court . . . may conduct a *de novo* review of the same facts and considerations that impelled the original magistrate's order.

*United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985) (per curiam). In doing so, the district court is required to independently consider all of the facts properly before it. *See United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988). If additional evidence is required to resolve the motion, the district court may hold an additional evidentiary hearing. *Id.*

The Court's inquiry into the necessity of pretrial detention is guided by 18 U.S.C. § 3142. Specifically, the Court examines whether there are any conditions or combination of conditions which reasonably will assure the appearance of the defendant as required, as well as the safety of any other person and the community. 18 U.S.C. § 3142(e). A finding that the defendant poses a flight risk or is a danger to the community is sufficient to detain the defendant pending trial.[5] *King*, 849 F.2d at 488. In making this determination, the Court considers the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

## III. DISCUSSION

The Bail Reform Act, 18 U.S.C. § 3142, governs pretrial detention. The Act provides that "[i]f, after a hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." *Id.* § 3142(e)(1). There is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for

---

[5] The Government must prove that the Defendant is a flight risk by a preponderance of the evidence, or that she is a danger to the community by clear and convincing evidence. *See United States v. King*, 849 F.2d 485, 488–89 (11th Cir. 1988).

9

which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A).

After the statutory presumption is triggered, "it becomes the task of the defendant to come forward with evidence to meet his burden of production—that is, evidence to suggest that he is either not dangerous or not likely to flee if turned loose on bail." *United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir. 1985). At a detention hearing, the defendant may satisfy this burden by testifying, presenting witnesses on his behalf, cross-examining any government witnesses, and presenting information by proffer or otherwise. *Id.*; 18 U.S.C. § 3142(f). However, even if the defendant presents sufficient evidence to rebut the statutory presumption, the effect of the presumption is not completely eliminated. *King*, 849 F.2d at 488. To this point, the "use of the word 'rebut' in this context is somewhat of a misnomer because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence relevant to factors listed in section 3142(g)." *Id.* (quoting *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985)) (internal quotation marks omitted).

"[W]hen the question is whether the defendant has successfully rebutted the presumption created in subsection (e), the judicial officer is directed to the four-part catechism of subsection (g)." *Hurtado*, 779 F.2d at 1479. The Court must then consider any available information concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of evidence against the person;

(3) the history and characteristics of the person including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). In applying the foregoing factors, "a finding of either danger to the community *or* risk of flight will be sufficient to detain the defendant pending trial." *King*, 849 F.2d at 488 (quoting *Portes*, 786 F.2d at 765).

### A. Legal Error

In the instant case, this Court is not convinced the rebuttable presumption applies. Mr. Field was before the Magistrate Judge for a positive urinalysis—that is, for possessing and using controlled substances. There was no suggestion, much less evidence, that Mr. Field possessed any controlled substance with the intent to distribute the substance. Simple possession of a controlled substance is categorized as a misdemeanor offense. 21 U.S.C. § 844. The rebuttable presumption is triggered by a controlled substance violation punishable by a sentence of ten years or greater. The penalty for simple possession of a controlled substance does not meet this definition. The Magistrate Judge twice remarked that Mr. Field had the burden to establish by clear and convincing

evidence that he does not pose a danger to the community. To the extent the Court relied upon the rebuttable presumption in denying Mr. Field bond, the Court erred. The Government had the burden of proving that no condition or combination of conditions would reasonably "assure the appearance of the person as required and the safety of any other person and the community."[6] 18 U.S.C. § 3142(g).

### B. Factual Error

The Government did not argue Mr. Field should be detained because he is a flight risk. In fact, Government counsel called Probation Officer Hartgrave who testified Mr. Field is not a flight risk. (Doc. 136, pp. 33-34). Consistent with this testimony, the Magistrate Judge limited denial of bond to the danger to the community prong. Here the Court committed an error of fact. The Magistrate Judge observed during the bond hearing that the evidence supports a finding that Mr. Field procured drugs and used them in his residence. (*Id.* at p. 37). The Government offered no evidence tending to show Mr. Field consumed drugs and thereafter operated his vehicle. Yet, the Court found the following:

> And then the last factor is the nature and seriousness of the danger that you pose to the community. And while it's certainly not a risk of violence, the fact that you're driving and using drugs does pose a danger to the community.

(*Id.* at p. 43).

Here the Court's findings are factually unsupportable. Neither Mr. Hartgrave nor Ms. Tabitha Field testified that Mr. Field uses drugs and then drives his vehicle. To the extent the Magistrate Judge supports the order of detention by finding Mr. Field has used drugs in violation of the conditions of supervised release, thereby demonstrating a willful

---

[6] Even if the rebuttal presumption applies to this case, the Court finds that Defendant has met his burden of rebutting the presumption, and the facts do not warrant detention.

disrespect for the rule of law, the evidence does not support this finding.[7] Mr. Hartgrave testified there is no evidence that Mr. Field is using drugs. (*Id.* at pp. 33–34). Rather, his alter, Tristin, is using drugs. (*Id.*). Mr. Hartgrave explained that on the day of the bond hearing, when the most recent positive urinalysis was obtained, he was dealing with Tristin and not Mr. Field. While this may seem like semantics, this case involves a person who all parties involved agree suffers from dissociative identity disorder. Therefore, the person standing before the Court and who will be subjected to detention is not the same "person" who is violating conditions of supervised release. This unique reality requires one to question whether Mr. Field is engaging in conduct that supports detention.[8]

## IV. CONCLUSION

This Court finds that in the setting of this specific and unique case, the recent use of drugs after eighteen months of successful supervision is insufficient to justify denying conditions of pretrial release. To be sure, Mr. Field presents a rare and complex case. This fact was not lost on the Magistrate Judge or the Government, both of whom struggled to reconcile the impact of dissociative identity disorder, the best interests of Mr. Field, and the need to ensure compliance with conditions of supervised release. The purpose of the Bail Reform Act is to detain only those individuals who present a risk of flight or a danger to the community, and Mr. Field's conduct does not satisfy either of these legitimate objectives.

---

[7] The Court found "[t]he offense in this case involves the use of drugs. So that weighs against your release." (Doc. 136, p. 44).
[8] If one of Mr. Field's alters, such as Tristin, were in fact operating a vehicle while under the influence of drugs, the Court would support a finding of detention, because the need to protect the community is of paramount importance. However, conduct that harms only Mr. Field does not merit detention pending the revocation hearing.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Revoke Order of Detention (Doc. 138) is **GRANTED**.

2. U.S. Magistrate Judge Kelly's Order of Detention (Doc. 135) is **REVOKED**.

3. Defendant, Michael Field, is ordered released pending a final hearing on revocation of supervised release with the following conditions:

    a. Defendant shall comply will all standard and special conditions of Supervised Release set forth in the Judgment (Doc. 118);

    b. Defendant shall be prohibited from operating a motor vehicle absent authorization by his Probation Officer; and

    c. Defendant shall participate in home detention with the exception of participating in mental health counseling and treatment, substance abuse treatment, or other activities authorized by his Probation Officer.

**DONE AND ORDERED** in Orlando, Florida on May 15, 2017.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

The Honorable Magistrate Judge
Counsel of Record